[Crim. No. 1227. Fourth Dist. Mar. 3, 1958.]

THE PEOPLE, Respondent, v. DALE JOAQUIN JENNINGS, Appellant.

*Assigned by Chairman of Judicial Council.

Dale Joaquin Jennings, in pro. per., and Thomas P. Daly, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Joe J. Yasaki, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged with the crime of murder, in violation of section 187 of the Penal Code, in that on or about March 2, 1957, he did wilfully, unlawfully, feloniously and with malice aforethought murder Westley Earnest Haworth, a human being. Defendant entered a plea of not guilty by reason of insanity and waived trial by jury. Three doctors were then appointed to conduct an examination upon him to determine his sanity and to report thereon to the court in writing. These reports were read and considered by the court and defendant was thereupon found to be sane.

It was then stipulated by the parties that the setting of the degree of the crime be submitted to the court on the medical reports and on June 19, 1957, the cause came on regularly for setting the degree for the crime charged. The court read and considered the reports of the three appointed medical examiners and the statement made by the defendant to the Kern County officers. A deputy sheriff testified on behalf of the People, and defendant's signed statement was offered and received in evidence. Counsel for the respective parties stipulated that if the doctors were called to testify, their testimony would be the same as their reports on file in said matter. The court then found the defendant to be sane and fixed the degree of the crime as murder in the first degree.

Defendant appeals from the judgment ordering that he be punished by imprisonment in the state prison for life.

On March 3, 1957, officers found the body of Westley Earnest Haworth near the intersection of Superior Road and Rosedale Highway in the vicinity of Bakersfield in Kern County. An autopsy revealed that Haworth died as a result of two gunshot wounds in the head. When found, the victim was lying on his back, his head to the north, and there was a considerable amount of blood under the back of his head. There were tire tracks near the body which indicated that a vehicle had made a "U" turn at a point approximately 10 feet south of the body and had stopped on the west side of the road. The tire tracks also indicated that approximately 40 feet south of the body the vehicle had left the vicinity

at a fairly high rate of speed. Footprints were observed extending from the car to a point approximately 10 feet south of it.

At about 5:30 p. m. on March 3, 1957, a Kern County deputy sheriff had a conversation with the appellant in the Kern County hospital, in which appellant stated that he remembered that he was driving an automobile and a highway patrol car pursued him in the vicinity of Camp Roberts; that he had had an accident but that he could not remember what had happened "previous to that." On March 4th the officer had a second conversation with appellant in an ambulance in which appellant was being taken to the Kern General Hospital. Appellant then stated that he "couldn't remember any of the events." On March 6th appellant made another statement to the officers at the hospital. Shorthand notes were made of this statement and a tape recording was made thereof by one of the officers. This statement is substantially as follows:

Appellant was 19 years old, lived in Bakersfield, and was stationed at Fort Ord, California. On March 2, 1957, he visited his grandmother, who lived near Shafter. While there he saw her husband's revolver, a .38 calibre, which was loaded with five rounds of ammunition, and when appellant left his grandmother's place, he took this gun, which she had placed under the mattress in the bedroom, and put it in his overcoat pocket. It was late in the morning of March 2nd when he left and he then hitchhiked to Calders Corner to visit some friends. He obtained a ride back to Shafter and then hitchhiked to Bakersfield, where he got off at the city limits, walked down town and started to hitchhike back towards Shafter. He caught a ride to Rosedale and from there to the intersection of Allen Road or Santa Fe Road, near Shafter. At about 4:30 in the afternoon, while he was trying to get a ride, a 1957 Chevrolet sedan was brought to a stop near him and the driver, who was alone, offered to take appellant to Bakersfield. He got into the car and when they reached Oak and 19th Streets in Bakersfield, appellant told the driver to stop the car. Appellant then got out and started to get his handbag, when the driver asked him to get back into the car and said that he would take appellant down where he was going. They then drove towards Taft Highway. The driver began talking about his Army experiences and about a young recruit who was forced to engage in sexual acts with members of his platoon. However, the driver made no advances or suggestions to the appellant.

After talking about women, drinking, and again about the young recruit, the driver drove a short distance on a dirt road, made a "U" turn, so that the car faced south, and stopped. The driver then reached over and put his hand on appellant's shoulder, but said nothing. Appellant told him he had better take appellant back to Bakersfield and when the driver said he was not going to do it, appellant reached into his overcoat and drew the revolver. The driver opened the car door on his side, jumped out and walked or ran backwards toward the rear of the car. Appellant got out on the driver's side and when the driver was facing him, a little distance behind the car, appellant stepped toward him, raised the gun, and pulled the trigger. Nothing was said by either appellant or the driver when they got out of the car and before the first shot was fired. After the first shot, the driver fell backwards and appellant then ran to him and, while the driver was lying on his back, appellant pointed the gun at his head and pulled the trigger again. Appellant then went back to the car, threw the gun on the front seat, got in and drove forward a few feet, when the car stalled. He again started the motor, spun the tires, and drove out onto the highway. When he was near Paso Robles, he opened the gun and threw the cartridges out the car window. He turned north toward Salinas and then saw a car with red lights behind him. He speeded up, and going into a curve, lost control of the car, crashed through a railing and was "thrown towards the ceiling." The next thing he remembered was that he was lying on the ground, with a coat or blanket over him. Appellant further stated that he thought he fired the first shot at the victim because he was "mad and disgusted" as a result of his conversation with him and that he did not know why he had fired the second shot.

All three of the appointed medical examiners reached the conclusion that appellant was legally sane. Dr. Stockton stated that in his opinion the appellant was a moderately intelligent "psychopathic delinquent," as defined in the Welfare and Institutions Code, and that he should be institutionalized indefinitely. Dr. Antonio Perelli-Minetti stated that appellant is considered sane with respect to the act charged and, at the time of his examination, sane for the purposes of standing trial; that appellant did not suffer from any mental defect, disease, or derangement rendering him incapable of appreciating the character and quality of the act charged or incapable of distinguishing between right and wrong as to the act. Dr. Alexander Augur stated that it

was his opinion that appellant was not insane at the time he committed the offense charged and was not insane on April 27, 1957, when the doctor examined him.

The principal question involved in this appeal is whether the evidence was sufficient to sustain a finding of first degree murder.

When appellant entered a plea of not guilty by reason of insanity without also pleading not guilty, he admitted the offense charged (Pen. Code, § 1016), and when he was found to be sane at the time the offense was committed, the court was required to sentence him as required by law (Pen. Code, § 1026). Since the crime of murder is divided into two degrees (Pen. Code, § 189), the court was required to determine the degree of the crime before passing sentence (Pen. Code, § 1192). Section 189 of the Penal Code provides in part that all murder which is committed in the perpetration or attempt to perpetrate robbery is murder of the first degree, and robbery is defined in section 211 of the Penal Code as the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

The corpus delicti of the crime of murder was established herein by evidence other than the statement of the appellant and by his failure to enter a plea of not guilty. In *People* v. *Miller,* 37 Cal.2d 801, 806 [236 P.2d 137], the court said:

"The corpus delicti of the crime of murder having been established by independent evidence, both reason and authority indicate that the circumstances surrounding the commission of the crime can be shown by the extrajudicial statements of the accused, and that such evidence of the surrounding circumstances may be used to establish the degree of the crime committed."

In *People* v. *Kerr,* 37 Cal.2d 11, 15-16 [229 P.2d 777], the court said: "The rule as to circumstantial evidence and the requirement as to burden of proof are for application in, and primarily are the concern of, the trial court; an appellate court will not alter or hold unsupported the trial court's findings merely because it might reasonably draw an inference different from one the trial court reasonably drew, or might not be convinced beyond a reasonable doubt that it would have made the same findings. . . . 'If the record affords substantial support . . . for the conclusion that one of the enumerated felonies was perpetrated or attempted, and the killing was committed in such perpetration or attempt, the judgment must be affirmed. . . . After conviction all intend-

ments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it. . . .' "

 The record shows that the appellant secured a loaded revolver from his grandmother's home and carried it concealed upon his person; that the deceased, Westley Earnest Haworth, had in his possession a 1957 automobile; that after this automobile was brought to a stop on a dirt road, appellant told Haworth he had better take him (appellant) back to Bakersfield and upon Haworth's refusal to do so, appellant drew the revolver from his coat pocket; that Haworth got out of the car and was walking or running backward from it when appellant shot him; that after the first shot and while Haworth was lying on his back, appellant fired a second shot at Haworth's head at close range; that immediately thereafter appellant took Haworth's car and hurriedly left the scene; that he emptied the gun and threw the shells out the window of the car and attempted to escape from the officers when he saw the red lights of their approaching car. These facts constitute substantial evidence from which the trial court could reasonably infer that the murder was committed in the perpetration of the crime of robbery.

 In *People* v. *Chavez*, 37 Cal.2d 656, 669-670 [234 P.2d 632], it was held that the law of this state has never required proof of a strict causal relationship between the felony and the homicide; that the homicide is committed in the perpetration of the felony if the killing and the felony are parts of one continuous transaction. In *People* v. *King*, 13 Cal.2d 521, 524-525 [90 P.2d 291], it was held that a murder committed prior to the actual forcible taking of property was committed in the perpetration of the robbery when the killing and the robbery were parts of one continuous transaction. And in *People* v. *Cabaltero*, 31 Cal.App.2d 52, 61-62 [87 P.2d 364], where the killing was done while the conspirators were attempting to flee from the scene of the robbery with the fruits thereof, it was held that the homicide was committed in the perpetration of a robbery.

The trial court herein was not required to accept as conclusive the statement of the appellant as to the reasons for the killing or the taking of the victim's car, where, as here, the evidence and the inferences to be drawn therefrom substantially support the trial court's findings. (*People* v. *Kerr*, *supra*, 14.)

 While a necessary element of the crime of robbery

is the specific intent to steal property (*People* v. *Sanchez,* 35 Cal.2d 522, 526 [219 P.2d 9]), such intent can be inferred from all the circumstances in the case (*People* v. *Hubler,* 102 Cal.App.2d 689, 695 [228 P.2d 37]).

Appellant contends that the evidence is insufficient to show premeditation and deliberation and in support of this contention cites *People* v. *Howard,* 211 Cal. 322, 329 [295 P. 333, 71 A.L.R. 1385], holding that "When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree." Appellant also cites *People* v. *Bender,* 27 Cal.2d 164, 186-187 [163 P.2d 8], holding that where there is no substantial evidence from which it reasonably can be inferred that defendant either formed or carried out the intent to kill deliberately, and with premeditation, in the ordinary meaning of those words, the judgment upon the finding of murder of the first degree cannot be sustained. These are correct statements of the law. However, in *People* v. *Eggers,* 30 Cal.2d 676, 685, 686 [185 P.2d 1], it was held that it is the exclusive province of the jury to determine from the evidence whether the killing was the "wilfull, deliberate and premeditated" act of the defendant; that an appellate court may not, in reviewing the evidence, substitute its judgment for that of the jury, and, where there is substantial evidence in support of the jury's verdict, its determination must be upheld; that to justify the reversal of a judgment of conviction, the record must clearly show that the evidence could not be interpreted as supporting the verdict; that no rule can be laid down as to the character or amount of proof necessary to show deliberation and premeditation; that each case depends upon its own facts; that the nature of the weapon used, or acts of malice which, in the usual course of things, would cause death or great bodily harm, tend to provide the reasonable basis for a conviction of murder in the first degree; and that in arriving at the intention of the defendant, regard should be given to what occurred at the time of the killing, if indicated by the evidence, as well as what was done before and after that time.

In *People* v. *Hills,* 30 Cal.2d 694, 700 [185 P.2d 11], it was held that the premeditated or deliberate intent need not be shown by direct evidence, but may be inferred from the proof of facts and circumstances as will furnish a reasonable foundation for such a conclusion.

In *People* v. *Dessauer*, 38 Cal.2d 547 [241 P.2d 238], the evidence showed that the defendant had a gun in the back seat of his car, that he entered the back seat rather than the front seat where his woman companion was seated, and that, after a conversation with her and with no apparent provocation, he aimed the gun at the back of her head and shot her four times. The court held that this evidence, together with other evidence, was sufficient to indicate an intent to kill and clearly established deliberation and premeditation.

█ In the instant case, the appellant, without provocation, deliberately pulled a loaded revolver from his pocket and pointed it at Haworth, who then got out of the car and ran or walked backward from it. Appellant then shot Haworth and when he fell and was lying on his back, defendant pursued him and fired a second bullet into his head. There were no words spoken after Haworth left the car and there was no evidence on the ground indicating a struggle of any kind, or that Haworth, who was unarmed, had resisted in any way or struggled with the defendant. These circumstances, under the rules announced, constituted proof of deliberation and premeditation.

█ Appellant contends that the court erred in applying the law in requiring him to show mitigating circumstances or motive. This argument is based on the following remarks of the trial court:

"In the face of the circumstances that no, there are no witnesses, of course, other than the defendant to the act that are able to state anything, taking the defendant's own statement the Court fails to find any mitigating circumstance or motive, which might cause this offense."

However, at the conclusion of the hearing the court said:

"Well, the Court has read these various statements that have been submitted to it and has attempted to analyze them, and the problem that faces the Court is that of fixing the degree.

"In the face of the circumstances that no, there are no witnesses, of course, other than the defendant to the act that are able to state anything, taking the defendant's own statement the Court fails to find any mitigating circumstance or motive which might cause this offense, and,—under the circumstances malice or premeditation and deliberation may be inferred and I think very probably should be in this case, so it is the finding of this Court at this time that this defendant is guilty of Murder in the First Degree."

In *People* v. *Hooper*, 35 Cal.2d 165, 169 [216 P.2d 876], the trial court referred to the hearing in a murder case as one "in mitigation of punishment" and the appellant argued that this characterization of the hearing showed that the court mistakenly believed that the defendant had the burden of showing mitigating circumstances to reduce the murder from first to second degree. It was there held that it could not be assumed that the reference to mitigation of punishment indicated misapprehension as to the law concerning the burden of proof of the degree of the offense; that in determining the degree of an offense and the punishment to be imposed, after a plea of guilty, it is the duty of the trial court to consider matters in aggravation as well as in mitigation of the offense and that there being nothing in the record establishing the contrary, it must be assumed in favor of upholding the judgment that the court performed its duties in accordance with the applicable law. Here, it cannot be assumed that the court's reference to "mitigating circumstances or motive" indicated misapprehension as to the law applicable. When the court's entire remarks are considered, a reasonable interpretation thereof is that the court determined that there was sufficient evidence to justify the finding of murder in the first degree.

Finally, appellant contends that the court erred in applying the law when it was said that premeditation and deliberation might be inferred. This contention is based on the following remarks of the trial court: ". . . under the circumstances malice or premeditation and deliberation may be inferred and I think very probably should be in this case." These remarks indicate that the court considered that the evidence was sufficient to show premeditation and deliberation.

Deliberation and premeditation need not be proven by direct evidence and may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference, and where the evidence is not in law insufficient, the matter is exclusively within the province of the jury for determination. (*People* v. *Guldbrandsen*, 35 Cal. 2d 514, 519-520 [218 P.2d 977].) The quoted remarks of the trial court do not indicate reversible error.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1958.