[No. B002796. Second Dist., Div. Six. Apr. 26, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ARNULFO VILLARREAL, Defendant and Appellant.

452

**COUNSEL**

Arthur Lewis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Shunji Asari and Donald E. De Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STONE, P. J.**—Arnulfo Villarreal appeals from an order fixing degree of murder pursuant to *Jackson* v. *Superior Court* (1983) 140 Cal.App.3d 526 [189 Cal.Rptr. 491]. ▮ Since the order affects appellant's substantial rights, it is appealable under Penal Code section 1237, subdivision (b). (See also *People* v. *Wetmore* (1978) 22 Cal.3d 318 [149 Cal.Rptr. 265, 583 P.2d 1308].)[1] Appellant contends the trial court improperly: 1) designated the degree of murder as first; 2) admitted into evidence appellant's involuntary confession; and 3) denied appellant a jury trial on the issue of degree. We affirm the trial court's ruling.

### FACTS

In 1976, the Ventura County District Attorney filed an information charging that appellant murdered Fortunato Galvan with a firearm April 21, 1976. (§§ 187, 12022.5.) Appellant withdrew his initial plea of not guilty and pled not guilty by reason of insanity. The court appointed three psychiatrists, Doctors Sheel, Patterson, and von Dedenroth to examine appellant and submit reports. (§ 1026.)

June 22, 1976, appellant waived his rights to jury trial and to confront and cross-examine witnesses. Both parties stipulated that the court consider all psychiatric reports and the preliminary hearing transcript to decide whether appellant was insane at the time of the crime and also whether he had regained his sanity. The court found appellant not guilty by reason of insanity, that he had still not regained his sanity, and ordered him committed to the Department of Corrections for placement in Atascadero State Hospital until he could prove restoration of sanity.

June 13, 1983, the district attorney moved to set a trial date to determine the degree of murder; the court denied appellant's request for jury trial. November 28, 1983, both parties stipulated that the court could receive in evidence transcripts of the preliminary hearing and the psychiatric reports, subject to objections to admissibility and use of appellant's extrajudicial statements. The court denied appellant's motion to exclude his extrajudicial

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

statements, and determined that appellant would have been found guilty of murder in the first degree had he been sane.

DISCUSSION

1. *Evidence of First Degree Murder*

In 1978, the California Supreme Court held, in *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097], that, absent special proceedings to extend a term based upon potential danger to society, a person committed to a state hospital because of a verdict of not guilty by reason of insanity could not be confined beyond the maximum term for the underlying offense. The following year the Legislature enacted Penal Code section 1026.5 which provided a format for setting maximum terms and seeking extended commitments. In pertinent part, subdivision (a)(2) provided that in the case of an Indeterminate Sentencing Law defendant confined for a felony committed before July 1, 1977 ". . . the Board of Prison Terms shall determine the maximum term of commitment which could have been imposed. . . ." It further provided that a person may not be kept in custody longer than the maximum term unless given a "serious offender" hearing to extend the commitment or a court determined, after petition and hearing, that the person "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subds. (b)(1)-(b)(9).)

In *Jackson v. Superior Court, supra,* 140 Cal.App.3d 526, the appellate court stated that nothing in *In re Moye* suggested that a person factually guilty of only second degree murder should receive the maximum term for first degree murder. (*Id.,* at p. 532.) The court further stated that had the defendant been sane at the time of the crime, the trial court would have been required to determine the degree of the crime and that it is incumbent upon prosecutors who wish a defendant's insanity commitment to be based upon the maximum term for first degree murder to seek and obtain such a determination from the trial court. (*Id.,* at p. 533.) *Jackson,* however, did not delineate guidelines to make such a determination.

 The holding in *Jackson* was not intended, as appellant infers, to breathe new life into a waiver of right to trial on the "not guilty" plea. Here the trial court correctly presumed appellant was sane for purposes of fixing the degree and allowed all evidence either side wished to present. The evidence disclosed that appellant purchased ammunition, loaded his gun, sharpened his knife, concealed himself in a darkened room and waited for the victim, shot him eight times, stabbed him forty-one times, and that he told his sister the day before the murder that he was going to kill Galvan.

There was substantial evidence to support the trial court's finding of first degree murder on theories of "lying-in-wait," or "willful, deliberate and premeditated." (§ 189; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

Appellant contends, however, that since he was originally adjudged insane at the time of the offense, he could not have the requisite state of mind for first degree murder; i.e., to premeditate, deliberate, or harbor malice aforethought. In essence, appellant asks us to hold that an insane person, as a matter of law, cannot commit first degree murder. We decline to do so. ▮ When both "not guilty" and "not guilty by reason of insanity" pleas are entered, a defendant is first tried as if only the "not guilty" plea had been entered, and is conclusively presumed to have been sane at the time the offense was committed. (§ 1026, subd. (a).) Since legal sanity is presumed at the first phase of the trial, evidence to show the existence of legal insanity is barred *on that issue* at that stage. (*People* v. *Wells* (1949) 33 Cal.2d 330, 351 [202 P.2d 53]; *People* v. *Corona* (1978) 80 Cal.App.3d 684, 717 [145 Cal.Rptr. 894].)[2]

Nevertheless, in 1976 appellant could have presented evidence at the "not guilty" phase of the trial that, because of diminished capacity due to mental illness not amounting to legal insanity, he was incapable of acting with malice aforethought or with premeditation and deliberation. (*People* v. *Cruz* (1980) 26 Cal.3d 233, 242 [162 Cal.Rptr. 1, 605 P.2d 830].) Diminished capacity was, at that time, a defense to all specific intent crimes. (*Ibid.;* but see § 28, amended by Stats. 1984, ch. 1433, § 1.) A jury might have found him guilty of second degree murder or manslaughter. On the other hand, it might have disbelieved the psychiatrists and convicted him of first degree murder. (See *People* v. *Wolff* (1964) 61 Cal.2d 795, 804 [40 Cal.Rptr. 271, 394 P.2d 959].)

▮ In the instant case, the trial court received in evidence, by stipulation, all three psychiatric reports. The trier of fact, however, is not automatically required to render a verdict which conforms to expert opinion (*People* v. *Drew* (1978) 22 Cal.3d 333, 350 [149 Cal.Rptr. 275, 583 P.2d 1318]), especially when, as here, the experts' reports were written within the framework of the McNaughton rule. (See *People* v. *Samuel* (1981) 29 Cal.3d 489, 502 [174 Cal.Rptr. 684, 629 P.2d 485].) Nonetheless, the trial court did not refuse to consider the evidence as in *People* v. *Wetmore*,

[2]In *People* v. *Wetmore, supra,* 22 Cal.3d 318, 327, the California Supreme Court held that evidence of diminished capacity is admissible at the guilt phase whether or not that evidence may also be probative of insanity, disapproving language to the contrary in *People* v. *Wells, supra,* 33 Cal.2d 330, and *People* v. *Gorshen* (1959) 51 Cal.2d 716, 734-735 [336 P.2d 492].

*supra,* 22 Cal.3d 318, 322.) Moreover, Penal Code section 189 leaves no doubt that if a murder is perpetrated by means of lying-in-wait, it need not be independently determined to have been wilful, deliberate, and premeditated. (*People* v. *Dickerson* (1972) 23 Cal.App.3d 721, 727 [100 Cal.Rptr. 533].) "Lying-in-wait" is sufficiently shown by proof of concealment and watchful waiting. (*People* v. *Harrison* (1963) 59 Cal.2d 622, 630 [30 Cal.Rptr. 841, 381 P.2d 665].)

### 2. *Admissibility of Appellant's Statements*

 Appellant's second contention is that the only evidence of first degree murder derives from his own statements which, he alleges, were involuntary. The trial court heard the testimony of Officer Elliott who had interviewed appellant after appellant's arrest. Elliott testified that appellant appeared normal, not agitated or excited but "complacent," and followed the officer's directions to enter the room and be seated. After Elliott began to read appellant his *Miranda* rights but before answering that he understood them, appellant volunteered that he had shot and stabbed the victim and that he had loaded the gun with bullets purchased from the "Big 5" store. He also demonstrated, with visible excitement, how he had hidden the knife in his sock. The officer then completed the *Miranda* rights; appellant said he understood and agreed to waive them and explained how he had obtained a gun, purchased bullets, loaded the gun, concealed himself in a room and waited for the victim to arrive. Approximately 40 minutes into the interrogation, appellant requested an attorney and the questioning ceased.

Doctor von Dedenroth testified that appellant was a psychotic paranoid schizophrenic, could not have understood his rights, and further was not capable of requesting an attorney. When confronted with the fact that appellant *had* requested an attorney, he said his opinion was unchanged. The trial court took judicial notice, upon respondent's request, that appellant's competency to stand trial was never questioned. (See *People* v. *Samuel, supra,* 29 Cal.3d 489.) Neither the attorneys nor any of the psychiatrists had ever suggested that appellant was incompetent within the context of section 1368 regarding ability to understand the nature of the proceedings and cooperate with counsel.[3] Furthermore, the trial court stated that, although it did not discredit von Dedenroth's testimony, the psychiatrist was neither present when appellant was questioned nor presented with appel-

---

[3]The question of mental competence to stand trial (§ 1368) is whether at time of trial the accused is able to understand the nature and purpose of the proceeding against him and to assist his attorney to conduct his defense in a rational manner. The legal defense of insanity (§ 1026) poses separate and distinct questions of whether an accused at time the offense was committed understood the nature and quality of his act and was able to distinguish right from wrong. (*People* v. *Corona, supra,* 80 Cal.App.3d 684, 713.)

lant's statements to determine whether these statements were made by someone irrational at that time.

█ The burden of establishing a waiver of right to counsel and the right to remain silent is on the prosecution and courts will indulge in every reasonable presumption against a waiver. (*People* v. *Duren* (1973) 9 Cal.3d 218, 237 [107 Cal.Rptr. 157, 507 P.2d 1365].) █ "Where there is no conflict in the evidence, there is no requirement that the reviewing court view it in the light most favorable to upholding the trial court's determination." (*Id.,* at p. 238.) But where, as here, evidence is in conflict, it is the duty of the reviewing court to determine if there is substantial evidence in the record to uphold the trial court's finding, and that ruling will not be disturbed on appeal unless it is palpably erroneous. (*Ibid.;* accord *People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)

█ Protections of *Miranda* do not extend to voluntary statements. (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 478 [16 L.Ed.2d 694, 725-726, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Statements volunteered by a defendant, even though made before he has been given a *Miranda* warning and while in custody, are admissible in evidence. (*People* v. *Ireland* (1969) 70 Cal.2d 522, 536 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]; see also *People* v. *McDaniel* (1976) 16 Cal.3d 156, 172 [127 Cal.Rptr. 467, 545 P.2d 843].) Admissibility depends upon prior warning only for statements in *response* to custodial interrogation. (*People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499].) █ As stated *supra,* the trial court was not bound to accept the expert's opinion on whether appellant was rational at the time he made the statements. (*People* v. *Drew, supra,* 22 Cal.3d 333, 350.) The other psychiatrists' reports did not address the voluntariness issue. Contrary to appellant's assertion, the record does not reflect the trial court *excluded* relevant evidence referring to appellant's state of mind.

Thus, involuntariness of the confession was not conclusively demonstrated as in *Blackburn* v. *Alabama* (1960) 361 U.S. 199 [4 L.Ed.2d 242, 80 S.Ct. 274], nor was a judgment of conviction based thereon. As stated in *People* v. *Gorshen, supra,* 51 Cal.2d 716, 734-735, disapproved on other grounds in *People* v. *Wetmore, supra,* 22 Cal.3d 318, 324, "[w]hen the statements are so viewed, it is apparent that this is a case where the trial court considered all the conflicting evidence and resolved it in support of its judgment, not a case where the trial court admitted evidence but because of a misapprehension of law refused to consider and weigh it upon the erroneous theory that it could not be considered." The trial court did not err when it found that appellant's abilities to reason, comprehend or resist were not so disabled that he was incapable of free or rational choice at the

time he made the statements to the police. (See *In re Cameron* (1968) 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633].)

Appellant further contends that the police failed to preserve a tape recording of appellant's statements and therefore the statements should be suppressed. Courts have recognized a prosecutor's duty to disclose material evidence favorable to the accused and the correlative duty to preserve it. (*People* v. *Nation* (1980) 26 Cal.3d 169, 175 [161 Cal.Rptr. 299, 604 P.2d 1051]; *People* v. *Hitch* (1974) 12 Cal.3d 641, 650 [117 Cal.Rptr. 9, 527 P.2d 361].) Appellant's argument fails here, however, because of insufficient evidence that a tape recording ever existed.

### 3. *Denial of Jury Trial*

■ Appellant claims he was denied his right to a jury trial on the issue of degree. Not so. He *waived* it in 1976. ■ Trying the issue of alleged insanity of a person who is charged with a crime is not a separate trial, but merely a separate determination of one of the issues of the original charge. (*People* v. *Foster* (1934) 3 Cal.App.2d 35, 39 [39 P.2d 271]; see also *People* v. *Phillips* (1979) 90 Cal.App.3d 356, 362-363 [153 Cal.Rptr. 359].) In the eyes of the law there is only one trial even though it is divided into two sections or stages if insanity is pleaded as a defense. (*People* v. *Wells, supra,* 33 Cal.2d 330, 349.) ■ As indicated above, nothing in *Jackson* indicated that the fixing of degree is a redetermination of his sanity or reopening of the issue of his guilt. Had appellant gone to trial on his original "not guilty" plea, the trial court would have had to determine the degree of the crime at that time. He waived his right to jury trial on both guilt of the underlying offense and the issue of his sanity. Substantial evidence supports the trial court's ruling. (*People* v. *Johnson, supra,* 26 Cal.3d 557, 567-569.)

The order fixing degree at first degree murder is affirmed.

Gilbert, J., and Abbe, J., concurred.