[No. F004225. Fifth Dist. Mar. 26, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL P. MINAHEN, Defendant and Appellant.

COUNSEL

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Joel Carey and Sandra V. Hughes, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FRANSON, Acting P. J.—

### STATEMENT OF THE CASE

Appellant Michael Minahen appeals from an order extending his commitment under Penal Code section 1026.5.[1] He contends that he was entitled

---

[1]Penal Code section 1026.5 reads in pertinent part:

"(a)(1) In the case of any person committed to a state hospital or other treatment facility pursuant to Section 1026, or placed on outpatient status pursuant to Section 1604, who committed a felony on or after July 1, 1977, the court shall state in the commitment order the maximum term of commitment, and the person may not be kept in actual custody longer

to a greater custodial credit than allowed by the Board of Prison Terms (BPT) in fixing his maximum term of commitment and that under the correct

than the maximum term of commitment, except as provided in this section. For the purposes of this section, 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits as defined by Section 2900.5, and disregarding any credits which could have been earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3.

"(2) In the case of a person confined in a state hospital or other treatment facility pursuant to Section 1026 . . ., *who committed a felony prior to July 1, 1977,* and who could have been sentenced under Section 1168 or 1170 if the offense was committed after July 1, 1977, *the Board of Prison Terms shall determine the maximum term of commitment which could have been imposed under paragraph (1), and the person may not be kept in actual custody longer than the maximum term of commitment, except as provided in subdivision (b). The time limits of this section are not jurisdictional.*

". . . . . . . . . . . . . . . . . . . .

"Within 20 days following the determination of the maximum term of commitment the board shall provide the person, the prosecuting attorney, the committing court, and the state hospital or other treatment facility with a written statement setting forth the maximum term of commitment, the calculations, and any materials considered in determining the maximum term.

"(3) In the case of a person committed to a state hospital or other treatment facility pursuant to Section 1026 or placed on outpatient status pursuant to Section 1604 who committed a misdemeanor, the maximum term of commitment shall be the longest term of county jail confinement which could have been imposed for the offense or offenses which the person was found to have committed, and the person may not be kept in actual custody longer than this maximum term.

". . . . . . . . . . . . . . . . . . . .

"(b)(1) A person may be committed beyond the term prescribed by subdivision (a) *only under the procedure set forth in this subdivision* and only if such person has been committed under Section 1026 for a felony, and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.

"(2) Not later than 180 days prior to the termination of the maximum term of commitment prescribed in subdivision (a), the medical director of a state hospital in which the person is being treated, or the medical director of the person's treatment facility or the local program director, if the person is being treated outside a state hospital setting, shall submit to the prosecuting attorney his or her opinion as to whether or not the patient is a person described in paragraph (1). If requested by the prosecuting attorney, the opinion shall be accompanied by supporting evaluations and relevant hospital records. The prosecuting attorney may then file a petition for extended commitment in the superior court which issued the original commitment. *Such petition shall be filed no later than 90 days before the expiration of the original commitment unless good cause is shown.* Such petition shall state the reasons for the extended commitment, with accompanying affidavits specifying the factual basis for believing that the person meets each of the requirements set forth in paragraph (1).

". . . . . . . . . . . . . . . . . . . .

"(4) The court shall conduct a hearing on the petition for extended commitment. The trial shall be by jury unless waived by both the person and the prosecuting attorney. The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless such time is waived by the person or unless good cause is shown.

". . . . . . . . . . . . . . . . . . . .

"(6) If the court or jury finds that the patient is a person described in paragraph (1), the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed. Any such commitment shall be for an additional period of two years from the date of termination of the previous commitment." (Italics added.)

All references are to the Penal Code unless otherwise noted.

term, the petition to extend his commitment was filed after his projected release date thereby depriving the trial court of jurisdiction to extend his commitment.

While we agree that appellant's maximum term of commitment was incorrectly computed by the BPT and thus the extension petition was filed after the correct term had expired, we nonetheless hold that the trial court had jurisdiction to extend the commitment. We affirm the judgment.

## THE PROCEEDINGS BELOW

On March 29, 1977, appellant was found not guilty by reason of insanity (NGI) of the crime of assault with a deadly weapon in violation of section 245, subdivision (a)(1). On April 14, 1977, upon recommendation of the Director of the Fresno County Department of Mental Health, appellant was ordered "committed to confinement in a facility approved by the County Mental Health Director until such time as [appellant] has been restored to sanity and so long as [appellant] cooperates with the Department of Mental Health in the treatment program prescribed, and so long as [appellant] remains in the facility approved by the County Mental Health Director; or until further order of the Court; . . ." Appellant was not to be placed on outpatient treatment status without approval of the court.

On April 28, 1978, the court ordered that appellant be given outpatient status if deemed appropriate by the mental health department. Appellant was granted outpatient status, and on October 9, 1980, proceedings were initiated to revoke that status because of threatening letters written by appellant. On November 12, 1980, the court revoked the outpatient status and ordered appellant committed to the Atascadero State Hospital for treatment because he had not recovered his sanity and was still a danger to the health and safety of others.

On March 23, 1981, the BPT fixed appellant's maximum term of commitment at four years, less one hundred forty-four days' custody credit. As calculated, appellant's maximum term would expire June 30, 1984.

On December 15, 1983, 198 days before the expiration of appellant's term of commitment, the interim executive director of Napa State Hospital requested the prosecuting attorney to petition for an extension of the commitment because appellant was believed to be "a person who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others, . . ." The request was accompanied by the statutorily required materials and noted the expiration date of appellant's maximum term.

On February 29, 1984, 122 days prior to the expiration of appellant's term, the People's petition to extend appellant's commitment was filed. On May 29, 1984, 32 days prior to the expiration of the term, trial commenced on the requested extension. On the same day, the court ordered appellant recommitted to the Napa State Hospital for an additional two years pursuant to section 1026.5, subdivision (b)(6).

## DISCUSSION

There is no question but that the time limits and procedural requirements of section 1026.5 for appellant's extended commitment were honored insofar as the BPT's calculated maximum term and release date. Nevertheless, the record shows that the BPT failed to give appellant custody credit for the time he was confined in the Fresno County Mental Health facility from April 14, 1977, to April 28, 1978. Section 1026.5, subdivision (a)(1), defines "maximum term of commitment" as: "the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed *less any applicable credits as defined by Section 2900.5*, and disregarding any credits which could have been earned pursuant to [§ 2930 et seq.]." (Italics added.) Section 2900.5 provides, in relevant part, that all days of custody of a defendant shall be credited upon his term of imprisonment. Since appellant was confined in a medical facility from April 14, 1977, to April 28, 1978, a total of three hundred seventy-nine days, his maximum release date should have been set at June 18, 1983, six months before the filing of the extension petition and almost one year before the extension hearing itself. The question thus becomes—what effect, if any, does the BPT's error in calculating appellant's maximum term have on the validity of the section 1026.5 proceedings?

■ Appellant argues that although the statutory time limits for submission of the medical director's letter to the district attorney, the filing of the petition for extended commitment and the commencement of the hearing may or may not be jurisdictional in the fundamental sense (cf. *In re Johns* (1981) 119 Cal.App.3d 577, 580-581 [175 Cal.Rptr. 443] and *People* v. *Pacini* (1981) 120 Cal.App.3d 877, 890 [174 Cal.Rptr. 820], it is clear from the statute that the maximum term of commitment is "jurisdictional" in that appellant must be released from custody when the term expires; therefore, the court has no power to hold an extension hearing after the expiration of that term, citing *People* v. *Pacini, supra,* 120 Cal.App.3d 877, 891 and *People* v. *Hill* (1982) 134 Cal.App.3d 1055, 1059 [185 Cal.Rptr. 64]. Appellant uses the term jurisdiction in its fundamental sense too broadly.

"Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715]; see Code Civ. Proc., § 1917; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 1, p. 366.) But the term "jurisdiction" does not have a single, fixed meaning; it has different meanings in different contexts. "The term, used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition." (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d at p. 287.)

Mr. Witkin explains that a typical misuse of the term "jurisdictional" is to treat it as synonymous with "mandatory." "There are many time provisions, e.g., in procedural rules, which are not directory but mandatory; these are binding, and parties must comply with them to avoid default or other penalty. But failure to comply does not render the proceeding void, and usually the court has power to relieve a delinquent party from his default." (Witkin, *op. cit. supra,* § 3, p. 368.) "[F]or the Legislature to declare that a section is mandatory does not necessarily mean that a failure to comply with its provisions causes a loss of jurisdiction to make any decision whatever." (*Liberty Mut. Ins. Co. v. Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 509 [42 Cal.Rptr. 58].)

A court's power to render a judgment, absent a defendant's concession of jurisdiction, requires procedural due process, i.e., that the person whose rights are to be adjudicated be given adequate notice so that he can exercise his right to be heard. (Rest.2d Judgment, § 2; Witkin, *op. cit. supra,* Jurisdiction, § 5, p. 370.) There is no question but that appellant was given adequate notice and full opportunity to be heard on the extension petition.

The extension procedure outlined in section 1026.5 was a legislative response to the Supreme Court's holding in *In re Moye* (1978) 22 Cal.3d 457, 467 [149 Cal.Rptr. 491, 584 P.2d 1097]. There, the court stated: "Specifically we hold that principles of equal protection require (*subject to the availability of either an extended commitment as outlined below, or a civil commitment under the LPS [Lanterman-Petris-Short] act*) that persons committed to a state institution following acquittal of a criminal offense on the ground of their insanity cannot be retained in institutional confinement beyond the maximum term of punishment for the underlying offense of which, but for their insanity, they would have been [punished]. . . . [¶] As in the case of MDSOs [mentally disordered sex offenders] and other dangerous offenders, persons in petitioner's class properly, and consistent with equal protection principles, *may be subjected to a period of extended commitment*

*once the maximum term of punishment has expired, in the event the People (or other committing authority) can establish that the person committed remains a danger to the health and safety of himself or others.* As noted above, for example, the commitment of MDSOs may be so extended only if a specified procedure is followed, involving the filing of a petition for an extended commitment of one year, notice to the person committed of his right to an attorney and a jury trial, and a hearing on the issue of dangerousness. (Welf. & Inst. Code, § 6316.2.)'' (Italics added.)

█ Nothing in *Moye* suggests any basic jurisdictional limitation on the judicial power to extend a commitment of a person found to be dangerous; the court recognized such a power provided only that procedural due process requirements are met. We further note that the Legislature explicitly provided in section 1026.5, subdivision (b)(2) that the "petition [for extended commitment] shall be filed no later than 90 days before the expiration of the original commitment *unless good cause is shown.*" (Italics added.) Also, section 1026.5, subdivision (a)(2) provides: "The time limits of *this section* are not jurisdictional." (Italics added.) Thus, the Legislature has indicated that the extension procedures of section 1026.5 are not jurisdictional in the fundamental sense of depriving a court of the power to extend the commitment of a dangerous person solely because the procedures are not complied with.

Appellant cites *People* v. *Pacini, supra,* 120 Cal.App.3d 877 for a contrary rule. There, the defendant was committed to a state mental hospital after being found NGI of involuntary manslaughter. The BPT set a maximum commitment release date of March 11, 1980. On October 29, 1979, the medical director wrote the district attorney requesting he file a petition to extend the commitment; however, the letter apparently was lost. When the district attorney failed to respond by February 21, 1980, the medical director advised him by telephone that defendant would soon be released.

The district attorney took no action until March 10, the day before the defendant was to be released. He then filed Lanterman-Petris-Short Act papers resulting in the defendant's retention for several weeks followed by the defendant's return to Atascadero to explore "any other grounds . . . to hold him."

Five weeks after the passage of the defendant's release date the district attorney filed an extension petition. The superior court approved the petition on the ground that the section 1026.5 time limits were not "jurisdictional." The Court of Appeal reversed because there was a failure to comply with

the statutory procedural requirement that the petition be filed before the expiration of the original commitment. The court stated the failure to comply was "jurisdictional" in the sense that the trial court had no authority to accept the belated petition or power to extend defendant's commitment. The court relied on the language of section 1026.5, subdivision (b)(1) that "'[a] person may be committed beyond the term prescribed by subdivision (a) *only* under the *procedure* set forth in this subdivision . . . .'" (*People* v. *Pacini, supra,* 120 Cal.App.3d at p. 889.) Thus, "whatever 'procedure' refers to, it is mandatory in the sense that without compliance . . . no 'person may be committed beyond the [existing] term.'" (*Ibid.*) The court rejected the contention that the provision in subdivision (a)(2) of the statute that "'[t]he time limits of *this section* are not jurisdictional'" (italics added) applied to the extension procedures specified in subdivision (b)(2). (*Id.,* at p. 890.)

The *Pacini* court did observe, however, that the subdivision (b)(2) time limits—the requirement that extension proceedings be commenced by letter from the medical director within six months prior to the expiration of the maximum term of commitment, the filing of the extension petition by the district attorney not later than 90 days before the expiration date and the commencement of trial not later than 30 days prior to the expiration of the term of commitments—"are unquestionably intended to afford a patient notice of and an opportunity to prepare for a trial to be completed before expiration of the existing term of commitment. (Pen. Code, § 1026.5, subd. (b)(4).) Compliance with these provisions spares patients a possibly painful choice between seeking an expeditious trial and presenting a complete defense. If a patient is successful in this defense, he is also spared a commitment longer than his existing term. Obviously, not every failure to comply with the 'time limits' would compromise the patient's liberty interest. *But we need not reach the issue whether the precise 'time limits' of subsection (b)(2) are within the term 'procedure' and hence are jurisdictional."* (120 Cal.App.3d at p. 891, italics added.)

We construe *Pacini*'s holding that the "procedure" of section 1026.5, subdivision (b)(2) is "mandatory" and "jurisdictional" insofar as requiring the extension petition to be filed before the maximum term expires as meaning only that such procedure should be enforced absent good cause for relieving the district attorney from the consequence of a late filing. Since there was a total lack of reasonable excuse for the district attorney's failure to file a timely extension petition in *Pacini,* there was no basis for relieving the People from the default. Even though the medical director's letter had been lost, the district attorney had been advised of the pending release date almost three weeks before the defendant's term was to expire, thereby giving ample time to file a petition before the term expired.

To the extent that *Pacini* should be construed to mean that the superior court has no jurisdiction in the fundamental sense to entertain a petition filed after the defendant's initially fixed maximum term has expired or to conduct a hearing on such a petition, we must respectfully decline to follow the holding. We believe that the extension provisions of section 1026.5, subdivision (b)(2) were designed primarily to benefit the public and not the individual defendant. (Cf. *Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 667 [200 Cal.Rptr. 293, 677 P.2d 219]; *People* v. *Superior Court (Martin)* (1982) 132 Cal.App.3d 658, 663 [183 Cal.Rptr. 563].) It is only upon proof that the defendant "represents a substantial danger of physical harm to others" (§ 1026.5, subd. (b)(1)) that his or her term can be extended, and this can be done only where procedural due process is afforded to the defendant, as in the present case. ■ Thus, we perceive no reason why an extension petition cannot be filed and considered after the original commitment term has expired upon a showing of good cause as to why the petition was not timely filed and assuming the defendant is afforded procedural due process.[2]

Appellant's reliance on *People* v. *Hill, supra,* 134 Cal.App.3d 1055 is also misplaced. *Hill* was concerned with forcing a defendant to trial on an extension petition only a few days before he was entitled to be discharged. The court stated that this "was exactly [the] type of unseemly haste, and *unnecessary confinement prior to proof,* that led to the enactment of the time limitations specified in section 1026.5." (*Id.,* at p. 1059.) While *Hill* makes a passing reference to *Pacini*'s jurisdictional holding, it was primarily concerned with the lack of procedural due process afforded to the defendant.

Other cases support our analysis. In *Jackson* v. *Superior Court* (1983) 140 Cal.App.3d 526 [189 Cal.Rptr. 491], the petitioner was found NGI of murder without any degree being fixed. The BPT set his maximum term of commitment at life, the term for first degree murder. The petitioner petitioned the court for a resetting of his maximum term based on second degree murder. As reset, the extension proceedings were untimely. The Court of Appeal held the petition to extend could still be entertained although "[b]y its terms, Penal Code section 1026.5, subdivision (b)(2), requires that a petition for a two-year extension be filed at least 90 days *before* the term expires. [Nevertheless,] [w]e have held in *Johns* v. *Superior Court* (1981) 119 Cal.App.3d 577 . . . that the period is not jurisdictional. Where, as here, the expiration of the term is caused by the term being reset, it would

---

[2]We express a caveat. Under no circumstances would the superior court have jurisdiction to entertain an extension petition filed after a defendant is *released* from confinement under his maximum term. This could no longer be viewed as an extension of the maximum term but rather an attempt to impose a new term which is not authorized by section 1026.5.

be unreasonable to require compliance with the 90-day requirement." (*Id.*, at p. 533, fn. omitted.)

The *Jackson* court recognized that both *Pacini* and *Hill* hold that an extension petition under section 1026.5, subdivision (b) must be filed before the expiration of the maximum commitment term. "However, neither case involved the resetting of a term after passage of the [original] release date. Were we to conclude that the prosecution could not seek an extension if the term is reset at the term for second degree murder, we would be encouraging patients to delay any challenges to term setting until expiration of their 'correct' terms, in order to foreclose the possibility of extension petitions. This thought provides us with ample cause to distinguish *Pacini* and *Hill.*" (140 Cal.App.3d at p. 533, fn. 2.)

In *People* v. *Dias* (1985) 170 Cal.App.3d 756 [216 Cal.Rptr. 295], the defendant was committed in 1974 as a mentally disordered sex offender (MDSO) for a maximum term of eight years, less applicable credits as provided by former Welfare and Institutions Code section 6316.1. Based on the original calculation his projected release date was November 12, 1981.

On December 5, 1977, defendant had been transferred from Patton State Hospital to Mission Hills Sanitarium, a locked facility. He remained there until August 31, 1978, when he was transferred to Beverly Manor Convalescent Hospital. On May 14, 1980, he was returned to Patton State Hospital. Defendant's release date was mistakenly recalculated on the theory that he had been an "outpatient" from Patton State Hospital while at Mission Hills Sanitarium and Beverly Manor Convalescent Hospital and was not entitled to credit while at those two facilities. Defendant's new release date was set at April 21, 1984.

A petition for extended commitment under former Welfare and Institutions Code section 6316.2 was filed by the district attorney August 30, 1983. Defendant moved to dismiss the petition on the ground that it was untimely. The motion was denied.

The Court of Appeal first noted that under former section 6316.1 (which continued to apply to persons like defendant), an MDSO "'may not be kept in *actual custody* longer than the maximum term of commitment, except as provided in Section 6316.2 [i.e., by an order for extended commitment].'" (*People* v. *Dias, supra,* 170 Cal.App.3d at p. 759.) Former section 6316.2, subdivision (b) and (d) provided that a petition for extension "shall be filed

no later than 90 days before the expiration of the original commitment" and that "trial shall commence no later than 30 days prior to the time the patient would otherwise have been released . . . ." The court noted that similar time limits for extended commitment of NGI's are found in section 1026.5, then said: "Although these time limits are *not* jurisdictional [citations], an order for extended commitment will generally be void if the petition was filed after the commitment expired [citations] or so close to the expiration date that defendant did not have a fair opportunity to prepare for trial [citations]. However, an order for extended commitment will be valid even though the petition was filed after expiration of the commitment if, as a result of legislative or judicial change, the term expired without a reasonable opportunity to prepare and file the petition. [Citations.]" (*Id.*, at pp. 762-763, italics added.) The court noted the absence of negligence or intentional wrongdoing by the parties charged with fixing the defendant's release date. "The error resulted from a mistake of law on an issue [custody credits] where the relevant statute was not explicit and there was no controlling judicial decision directly on point." (*Id.*, at p. 763.) The *Dias* court then concluded: "*Given the evidence showing defendant continues to present a substantial danger of bodily harm to others, neither defendant nor the public would benefit by defendant's release at this time.*" (*Ibid.*, italics added.)

■ By analogy to the *Dias* facts where the erroneous denial of custody credits in an MDSO commitment term produced an untimely extension petition without any fault by the district attorney, the erroneous denial of custody credits by the BPT which produced an untimely petition without the fault of the district attorney in a section 1026.5 case should produce the same result—the power in the superior court to hear the petition and to extend the commitment term. Here, the People through the district attorney did everything reasonably possible to comply with the statutory procedures for an extended commitment. It was only because the BPT had erroneously concluded that appellant was on outpatient status while confined at the Fresno County medical facility that an incorrect commitment was set which rendered untimely the extension petition.

We conclude, therefore, that because the petition to extend appellant's commitment and the hearing on the petition accorded with the statutory procedures and time requirements under the maximum term of commitment computed by the BPT, thereby affording appellant procedural due process at the extension hearing, and because the appellant had not actually been released from confinement when the petition was filed, the trial court had the power to extend appellant's commitment. The BPT's error in calculating the maximum term constituted good cause to relieve the district attorney from his default in timely filing the extension petition.

The judgment is affirmed.

Hamlin, J., and Reid, J.,* concurred.

A petition for a rehearing was denied April 21, 1986, and appellant's petition for review by the Supreme Court was denied July 15, 1986.

---

*Assigned by the Chairperson of the Judicial Council.