[No. B126210. Second Dist., Div. Three. Dec. 23, 1998.]

GILBERT GARCETTI, as District Attorney, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CARNOT ANDRES LYLES, Real Party in Interest.

**COUNSEL**

Gil Garcetti, District Attorney, Patrick D. Moran and Fred Klink, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Alan Ross for Real Party in Interest.

## OPINION

**KLEIN, P. J.**—The People seek a writ of mandate directing respondent superior court to vacate its order dismissing the People's petition for commitment of real party in interest Carnot Andres Lyles (Lyles) under the Sexually Violent Predators Act (SVP Act). (Welf. & Inst. Code, § 6600 et seq.)[1]

The essential issue presented is whether the trial court erred in dismissing the People's petition on the ground it lacked jurisdiction because Lyles was not lawfully in custody at the time the People filed the petition for commitment.

We conclude the trial court had jurisdiction to proceed on the petition for commitment, irrespective of the circumstances of Lyles's parole revocation. Therefore, we grant the People's petition for writ of mandate.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 1979, in No. A558198, Lyles was convicted of nine felony counts including sodomy in concert (Pen. Code, § 286, subd. (d)) and was sentenced to state prison for a term of fifteen years and eight months. On September 22, 1989, in No. A577027, Lyles was convicted of a lewd act upon a child (Pen. Code, § 288, subd. (a)) and was sentenced to eight years in prison.

Before Lyles was scheduled to be released on parole, he was screened by the Department of Corrections and the Board of Prison Terms to determine whether he fit the criteria for a sexually violent predator. It was determined that Lyles met the initial criteria based on his qualifying offenses, and on October 22, 1996, a memorandum was sent by the Board of Prison Terms and the Department of Corrections to the Department of Mental Health referring Lyles for clinical evaluation.

In November 1996, Lyles was evaluated by two psychologists, Drs. Inman and Hausman. Both experts concluded Lyles met the criteria as a sexually violent predator. The conclusion was based on Lyles's sexually violent offenses against two or more victims, a finding of a diagnosable mental disorder, and a finding that Lyles was likely to engage in sexually violent criminal behavior as a result of his diagnosed mental disorder.

On December 4, 1996, the People filed a petition for commitment of Lyles as a sexually violent predator, on the grounds Lyles has been convicted of

---

[1]Statutory references are to the Welfare and Institutions Code except where otherwise designated.

sexually violent offenses within the meaning of subdivisions (b) and (e) of section 6600, he had a diagnosed mental disorder, and without appropriate treatment and custody, he was likely to engage in acts of sexual violence.

On July 27, 1998, following a probable cause hearing, the trial court found probable cause existed to believe Lyles was likely to engage in sexually violent predatory criminal behavior upon his release and remanded Lyles to the custody of the county sheriff.

1. *Lyles's motion to dismiss on the ground he was not lawfully in custody.*

On August 26, 1998, Lyles filed a motion to dismiss the petition for commitment. Lyles sought dismissal on the ground his parole was unlawfully revoked and he was unlawfully in the custody of the Department of Corrections at the time he was referred for evaluation under the SVP Act, in that parole revocation for psychiatric treatment was prohibited by *Terhune* v. *Superior Court* (1998) 65 Cal.App.4th 864 [76 Cal.Rptr.2d 841]. The motion to dismiss included a procedural history of Lyles's custody.

The record shows: Lyles was scheduled to be released on parole on December 18, 1994, but on December 16, 1994, the Board of Prison Terms placed a parole hold on Lyles pending a parole revocation hearing for psychiatric treatment. On January 25, 1995, the hearing was held, parole was revoked and Lyles was returned to custody for 12 months. Thus, Lyles was scheduled to be released on December 18, 1995. However, on December 12, 1995, a parole hold again was placed on Lyles pending another revocation hearing for psychiatric treatment. On January 5, 1996, the hearing was held, parole was revoked for psychiatric treatment, and Lyles again was returned to custody for 12 months, with a new release date of December 17, 1996. However, on December 4, 1996, the Los Angeles District Attorney's office filed an SVP petition to commit Lyles.

Lyles argued he was entitled to dismissal because the SVP Act is intended to apply only to persons in custody, and he was in custody solely because his parole had been revoked twice for psychiatric treatment, on January 25, 1995 and again on January 5, 1996. Under *Terhune,* the revocations were illegal, and "[b]ut for the unlawful revocation of parole, [he] would not have been in custody and subject to SVP proceedings. . . . To proceed with the SVP case against [him] would be tantamount to going forward on evidence which is fruit of the poisonous tree."

2. *The People's opposition, asserting the trial court had jurisdiction to proceed.*

The People argued Lyles's position was contrary to law in that *Terhune* did not mandate a dismissal of the People's petition. The People asserted the trial court's jurisdiction over an SVP petition was not dependent on the abstract concept of "legal" custody proposed by Lyles. Rather, all that is required under the SVP law is that the petition be filed prior to the inmate's actual release from custody. "If the individual is wrongfully incarcerated by the [Department of Corrections], the individual's remedy is to attempt to terminate the 'unlawful' custody by administrative appeal or writ of habeas corpus. However, under the unambiguous language of section 6601(a), as long as this individual is in 'actual custody under the jurisdiction of the [Department of Corrections]' nothing else is required to invoke the SVP process." The People also acknowledged, "[o]f course, if the custody [were] a complete sham without any pretense of legal authority, the [Department of Corrections] would not have 'jurisdiction' in any legal sense. This case does not present such an extreme situation."

3. *Trial court's dismissal of SVP petition based on "unlawful custody."*

The dismissal motion was heard on September 23, 1998. The trial court granted the motion, finding *Terhune* was dispositive. It ruled: "The cause under the *Terhune* case was the same cause for revocation as was the cause in this case. There appears to be no behavior or other documentation on the part of the Department of Corrections that would have justified either the first or second psychiatric hold placed against Mr. Lyles. Therefore, the Court, based upon *Terhune,* has to conclude that the revocation of his parole which led to the SVP proceeding was illegal under these circumstances. The Legislature doesn't talk about *lawful* custody. I don't think the Legislature presumes that the Department of Corrections would act unlawfully, and I'm sure that the Legislature intended that a person in custody subject to SVP review be lawfully in custody. It appears to the Court Mr. Lyles was not lawfully in custody and that therefore had he not been in custody, there would have been no basis legally for initiating SVP review and the filing of the petition. So at this point, the Court concludes that the motion to dismiss must be granted under the authority of the *Terhune* case . . . ." (Italics added.)

4. *The People's emergency writ petition granted.*

The People filed an emergency petition for writ of mandate and sought a stay of Lyles's release from custody. This court issued an alternative writ and stayed Lyles's release as well as all proceedings in the action.

CONTENTION

 The People contend the trial court erred in ruling dismissal was mandated by *Terhune*.[2]

DISCUSSION

1. *The statutory scheme.*

We begin with an overview of the SVP Act (§ 6600 et seq.), which was enacted in 1995.

The Legislature stated its purpose in adopting the SVP Act as follows: "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, ch. 762, § 1; *id.*, ch. 763, § 1.)

The SVP Act establishes a procedure that may result in the civil commitment of a sexually violent predator, which it defines as a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence, and who has a diagnosed mental disorder that makes the person a danger to the health and safety of

---

[2]Lyles raises a number of evidentiary objections to the petition for writ of mandate. No ruling thereon is necessary. The pertinent facts essentially are undisputed and the issue raised by the petition is one of law—whether "lawful custody" is a jurisdictional prerequisite to the filing of a petition for commitment under the SVP Act.

others in that it is likely that he or she will engage in sexually violent criminal behavior. (§ 6600, subd. (a).)

Under the SVP Act, the Department of Corrections is authorized to refer "an individual who is in custody under the jurisdiction of the Department . . . and who is either serving a determinate prison sentence or whose parole has been revoked" for an initial screening and an evaluation by the Department of Mental Health to determine whether the person is a sexually violent predator. (§ 6601, subds. (a), (b).) The reference for evaluation is to be made at least six months before the individual's scheduled release date; the evaluation is to be conducted by two specified mental health professionals. (§ 6601, subds. (a), (d).)

If both mental health professionals concur that the individual is a sexually violent predator, the Director of the Department of Mental Health must forward a request for a petition for commitment to the county in which the prisoner was last convicted.[3] (§ 6601, subd. (d).) Upon the filing of the petition, the trial court must hold a "probable cause hearing." If the court finds probable cause to believe the person is likely to engage in sexually violent predatory criminal behavior upon his or her release, it must order a trial and must order that the person "remain in custody in a secure facility until a trial is completed." (§ 6602.) The SVP Act affords the individual a number of procedural safeguards, including the right to trial by jury, the assistance of counsel, and the right to retain experts. The standard of proof is beyond a reasonable doubt; if the individual has requested a jury, the verdict must be unanimous. (§§ 6603, 6604.)

A person determined at trial to be a sexually violent predator must be committed to the custody of the Department of Mental Health for appropriate treatment and confinement in a secure facility for two years, and is subject to extended commitments incident to the filing of new petitions. The SVP Act also includes provisions for an annual review of the individual's mental condition, conditional release, and discharge upon a determination at a hearing of a change in that condition. (§§ 6604, 6605.)[4]

---

[3]If only one of the professionals performing the evaluation determines that the individual is a sexually violent predator, the Department of Mental Health must arrange for further examination of the person by two independent health professionals, with specified qualifications. (§ 6601, subds. (e), (g).)

[4]Several cases involving the constitutionality of the SVP Act are now pending before the California Supreme Court, including *People* v. *Hedge* (1997) 56 Cal.App.4th 773 [65 Cal.Rptr.2d 693], review granted October 29, 1997 (S063954); *Hubbart* v. *Superior Court** (Cal.App.) review granted February 26, 1997 (S052136); *Garcetti* v. *Superior Court* (1996) 49 Cal.App.4th 1533 [57 Cal.Rptr.2d 420], review granted February 5, 1997 (S057336), and

*Reporter's Note: For Supreme Court opinion, see *Hubbart* v. *Superior Court* (1999) 19Cal.4th 1138.

### 2. *Terhune decision does not speak to the issue herein.*

#### a. *Case summary.*

By way of background, the Board of Prison Terms promulgated numerous regulations relating to conditions of parole and revocation of parole, which appear in title 15 of the California Code of Regulations. Section 2616 of those regulations (section 2616) lists types of behavior that must be reported to the Board as a parole violation. Subdivision (a)(7) of section 2616 states: "Psychiatric Treatment. Facts indicating the parolee is suffering from a mental disorder which substantially impairs the parolee's ability to maintain himself or herself in the community, or which makes the parolee a danger to himself/herself or others, when necessary psychiatric treatment cannot be obtained in the community."

In *Terhune,* the inmate served a determinate prison term. After his initial parole release date passed, but before he was released into the community, his parole was revoked twice pursuant to section 2616, subdivision (a)(7). *Terhune* found the parole revocation was an act in excess of the board's statutory authority. (*Terhune* v. *Superior Court, supra,* 65 Cal.App.4th at p. 843.)

*Terhune* explained: "[A]lthough the Legislature has vested the Board with broad power both to impose conditions of parole and to revoke parole, it has also decreed that the Board has no discretion to withhold parole to a prisoner who has served a determinate term. Admittedly no statute expressly precludes parole revocation prior to release based solely on concerns about an inmate's mental condition and need for psychiatric treatment. Nevertheless, the Legislature has directly addressed the public safety and treatment concerns such individuals present by supplementing the [Lanterman-Petris-Short Act (LPS Act) (§ 5000 et seq.)] with the [mentally disordered offender law (MDO Law) (Pen. Code, § 2960 et seq.)] and the SVP Act. Each of those acts applies to a precisely defined category of individuals, prescribes a detailed sequence of evaluations and procedures that must be followed, and affords the affected individuals mandatory procedural safeguards, including the right to a jury trial, before civil commitment can occur. When considered together with Penal Code section 3000, subdivision (b)(1), the mandatory parole release provision of the determinate sentencing law, these statutes

*People* v. *Superior Court (Cain)* (1996) 49 Cal.App.4th 1164 [57 Cal.Rptr.2d 296], review granted February 5, 1997 (S057272). The issues raised include whether the SVP Act violates the constitutional guarantee of equal protection or the prohibitions against ex post facto laws and double jeopardy. Recently the United States Supreme Court upheld the constitutionality of a similar act enacted by Kansas. (*Kansas* v. *Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501].)

impliedly reflect a legislative choice to require the Department and the Board to utilize one of these acts when confronted with the problem of the potentially dangerous mentally disordered inmate. Because the Legislature has so fully occupied the subject matter, we conclude that the Board's utilization of the expedient of parole revocation under section 2616(a)(7) instead of civil commitment for the mentally disordered inmate who is about to released into the community on parole is unauthorized." (*Terhune* v. *Superior Court, supra,* 65 Cal.App.4th at p. 878.)

b. *No issue in Terhune as to whether the inmate remained subject to the SVP Act.*

In *Terhune,* the reviewing court was not presented with a petition to declare the inmate a sexually violent predator. Therefore, *Terhune* was not called upon to address whether "lawful" custody is a jurisdictional prerequisite to the filing of a petition under the SVP Act. In fact, the *Terhune* decision expressly states it "does not directly involve" the SVP Act. (*Terhune* v. *Superior Court, supra,* 65 Cal.App.4th at pp. 868-869.)

Rather, as summarized above, the issue in *Terhune* was whether parole revocation for psychiatric treatment, pursuant to a regulation promulgated by the Board of Prison Terms, in lieu of statutory civil commitment proceedings and procedural safeguards, was proper. *Terhune* concluded the board lacks statutory authority to revoke parole for psychiatric treatment, based solely on a determination the inmate has a mental disorder and requires psychiatric treatment within the meaning of the regulation. (*Terhune* v. *Superior Court, supra,* 65 Cal.App.4th at p. 880.) Although *Terhune* held the Board of Prison Terms had exceeded its authority in revoking parole for psychiatric treatment pursuant to its regulation, *Terhune* did not purport to preclude the People from proceeding at that juncture with a petition for civil commitment pursuant to the SVP Act. *Terhune* is simply silent on that issue.

Therefore, the trial court herein erred in construing *Terhune* as requiring dismissal of the People's petition for commitment under the SVP Act.

3. *Remedy for "unlawful" custody is not immunity from civil commitment under the SVP Act.*

Having determined that *Terhune* is not controlling, we turn to the specific issue presented, namely, whether the trial court had jurisdiction to entertain the People's petition for commitment of Lyles as a sexually violent predator. A person subject to commitment under the SVP Act is "an individual *who is in custody under the jurisdiction of the Department . . . and who is either*

*serving a determinate prison sentence or whose parole has been revoked
. . . ."* (§ 6601, subd. (a).)[5]

However, it does not inevitably follow from the SVP Act's element of custody that a determination of *lawful* custody is a jurisdictional prerequisite to the filing of a petition under the SVP Act for civil commitment. The question here is whether the fact Lyles's custodial status stemmed from an improper revocation of parole immunizes him from a petition for commitment as a sexually violent predator. As explained below, the trial court erred in treating the improper revocation of parole as a jurisdictional defect barring the People's petition for commitment.

Given the dearth of case law construing the recently enacted SVP Act, we look to case law pertaining to analogous statutory schemes for guidance.

a. *Case law pertinent to interpretation and application of the SVP Act.*

In *People v. Curtis* (1986) 177 Cal.App.3d 982 [223 Cal.Rptr. 397], the defendant pled guilty to having committed a lewd act upon a child and was committed as a mentally disordered sex offender (MDSO).[6] Trial on a petition to extend his commitment commenced 28 days before his scheduled release, in violation of former section 6316.2, subdivision (d), which provided "trial shall commence no later than 30 days prior to the time the patient would otherwise have been released by the State Department of Mental Health." The lower court denied the defendant's motion to dismiss the petition for extended commitment, the jury found true the allegations of the petition, and the court entered an order extending defendant's commitment. (177 Cal.App.3d at pp. 985-987.)

The reviewing court affirmed, rejecting defendant's contention the statutory time limit was jurisdictional so as to bar the lower court from hearing the petition. (*People v. Curtis, supra,* 177 Cal.App.3d at p. 986.) *Curtis* quoted from the California Supreme Court's decision in *People v. McGee* (1977) 19 Cal.3d 948, 958 [140 Cal.Rptr. 657, 568 P.2d 382], as follows: " 'Traditionally, the question of whether a public official's failure to comply

---

[5]California's SVP Act stands in contrast to the sexually violent predators statute enacted in Washington State, extending to certain persons already released from confinement and thus, not in custody. (Wn. Rev. Code, § 71.09.030.)

[6]The MDSO statutes (former § 6300 et seq.) were repealed in 1981. (Stats. 1981, ch. 928, § 2, p. 3485.) However, case law analyzing the impact of a failure by government officials to follow statutory procedures on a court's jurisdiction to proceed on a petition for commitment is still instructive. (See *People v. Minahen* (1986) 179 Cal.App.3d 180, 190-191 [224 Cal.Rptr. 460].)

with a statutory procedure should have the effect of invalidating a subsequent governmental action has been characterized as a question of whether the statute should be accorded "mandatory" or "directory" effect. If the failure is determined to have an invalidating effect, the statute is said to be mandatory; if the failure is determined not to invalidate subsequent action, the statute is said to be directory . . . . [I]n evaluating whether a provision is to be accorded mandatory or directory effect, courts look to the purpose of the procedural requirement to determine whether invalidation is necessary to promote the statutory design.' (19 Cal.3d at p. 958.)" (*Curtis, supra,* 177 Cal.App.3d at pp. 987-988.)

*Curtis* stated the general rule is that requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. (*People v. Curtis, supra,* 177 Cal.App.3d at p. 988.) *Curtis* examined the purposes of the recommitment procedures in the MDSO statutes and determined they were "to provide reasonable assurance trial will be completed and recommitment orders entered in appropriate cases, so that MDSOs who still pose a substantial danger to society will not be released from custody. . . . [¶] . . . [T]he 30-day statute at issue was designed to serve a public administrative purpose and was not intended to provide protection or benefit to defendant. [Citation.] Moreover, . . . the previously described purposes of [the statute] would be defeated if the time provision at issue were given mandatory effect. [Citation.] It would be anomalous to construe a statute designed to prevent the release of dangerous people into the community in such a way that an inconsequential violation of a time requirement would allow the very release the statute is designed to prevent. We therefore conclude the trial commencement requirement in [the MDSO statute] is directory, not mandatory, so that its violation in this case did not deprive the trial court of jurisdiction to conduct the trial and enter its recommitment order. [Citation.]" (*People v. Curtis, supra,* 177 Cal.App.3d at p. 989.)

By a parity of reasoning, the legislative intent in placing time provisions in the SVP Act was to protect the public and allow time for evaluations and judicial proceedings to be completed before a sexually violent predator's scheduled release date. Consequently, the failure of the Department of Corrections to release Lyles in 1994, which was the result of its application of section 2616, subdivision (a)(7), did not deprive the trial court of jurisdiction to entertain the People's petition for commitment pursuant to the SVP Act.

Similarly, in *People v. Dias* (1985) 170 Cal.App.3d 756 [216 Cal.Rptr. 295], the defendant appealed an order extending his commitment by two years as an MDSO. (*Id.,* at p. 758.) The controlling statute provided a

petition for extended commitment " 'shall be filed no later than 90 days before the expiration of the original commitment.' " (*Id.*, at p. 762.) *Dias* agreed with the defendant's contention the petition for extended commitment was *untimely* in that it was not filed until after the commitment had expired. (*Id.*, at pp. 758, 760.) Nonetheless, *Dias* upheld the lower court's order denying defendant's motion to dismiss the petition.

*Dias* explained: "[A]n order for extended commitment will be valid even though the petition was filed after expiration of the commitment if, as a result of legislative or judicial change, the term expired without a reasonable opportunity to prepare and file the petition. [Citations.] [¶] *The record before us contains no hint of negligent or intentional wrongdoing by the persons charged with determining defendant's release date. The error resulted from a mistake of law on an issue where the relevant statute was not explicit and there was no controlling judicial decision directly on point.* In this situation, we do not believe the error should be fatal to the extended commitment order. Given the evidence showing defendant continues to present a substantial danger of bodily harm to others, neither defendant nor the public would benefit by defendant's release at this time." (*People v. Dias, supra,* 170 Cal.App.3d at p. 762-763, italics added.)

*People v. Minahen, supra,* 179 Cal.App.3d 180, provides further support for the proposition the trial court had jurisdiction to proceed on the instant petition for Lyles's commitment. In *Minahen,* the defendant was found not guilty by reason of insanity (NGI) and was committed to a state hospital. The People filed a petition to extend his commitment. However, due to an error by the Board of Prison Terms in calculating the amount of custodial credit to which the defendant was entitled, the petition was not filed until six months after his maximum release date. (*Id.,* at pp. 184-185.) Similar to Lyles's contention herein, the defendant contended the court had no jurisdiction to hold an extension hearing after the expiration of the maximum term of commitment. (*Id.,* at p. 185.)

*Minahen* agreed the defendant's maximum term of commitment was incorrectly computed by the Board of Prison Terms and thus the extension petition was filed after the correct term had expired. Nonetheless, *Minahen* found the lower court had jurisdiction to extend the commitment. (*People v. Minahen, supra,* 179 Cal.App.3d at p. 184.) Relying, inter alia, on *People v. Dias, supra,* 170 Cal.App.3d 756, *Minahen* reasoned: "[T]he People through the district attorney did everything reasonably possible to comply with the statutory procedures for an extended commitment. It was only because the [Board of Prison Terms] had erroneously concluded that appellant was on outpatient status while confined at the Fresno County medical facility that an

incorrect commitment was set which rendered untimely the extension petition. [¶] We conclude, therefore, that because the petition to extend appellant's commitment and the hearing on the petition accorded with the statutory procedures and time requirements under the maximum term of commitment computed by the BPT, thereby affording appellant procedural due process at the extension hearing, *and because the appellant had not actually been released from confinement when the petition was filed*, the trial court had the power to extend appellant's commitment." (*Minahen, supra*, 179 Cal.App.3d at p. 191, italics added.)

Also pertinent here is *People* v. *Mord* (1988) 197 Cal.App.3d 1090 [243 Cal.Rptr. 403]. In *Mord*, the defendant was committed to Atascadero State Hospital after a finding of not guilty by reason of insanity. (*Id.*, at p. 1097.) The People filed a petition to extend his commitment pursuant to Penal Code section 1026.5. (197 Cal.App.3d at p. 1098.) Defendant moved to dismiss, claiming he was due certain credits, and if the credits were granted the petition would be rendered untimely. (*Ibid.*) He also sought dismissal on the ground of noncompliance with outpatient parole extension hearing requirements. (*Id.*, at pp. 1098, 1109-1110.) The trial court denied defendant's dismissal motion. (*Id.*, at p. 1099.)

*Mord* affirmed the subsequent recommitment order, relying inter alia, on *Minahen*. "[E]ven if appellant were entitled to the credits he claims, pursuant to *People* v. *Minahen, supra,* 179 Cal.App.3d 180, the untimeliness of the petition does not render the recommitment itself void." (*People* v. *Mord, supra*, 197 Cal.App.3d at p. 1110.) As for the failure to hold annual review hearings, *Mord* observed ". . . the primary purpose behind the annual review hearings is not to protect appellant's individual interests, but to protect the public's interest in ensuring that insane persons receive the treatment they need." (*People* v. *Mord, supra*, 197 Cal.App.3d at p. 1114.) *Mord* concluded the statutory provision requiring annual review hearings (Pen. Code, former § 1611, subd. (a)) was directory rather than mandatory. It reasoned that giving an invalidating effect to the failure to hold such hearings would not promote the statutory design of protecting the public and ensuring insane persons receive the treatment they need. (197 Cal.App.3d at pp. 1113-1114.)

b. *Case law supports the conclusion the circumstances of Lyles's parole revocation did not deprive the trial court of jurisdiction to entertain the People's petition for commitment under the SVP Act.*

Guided by the above decisions, we readily conclude the trial court erred in dismissing the instant petition simply because Lyles was not "lawfully" in

custody due to an improper revocation of parole and that such defect deprived the trial court of jurisdiction to entertain the petition for commitment under the SVP Act.

In the instant case, the revocation of Lyles's parole was pursuant to section 2616, subdivision (a)(7). Such revocation subsequently was invalidated by *Terhune*. However, the revocation of Lyles's parole was without any hint of negligence or intentional wrongdoing by government officials because there was no judicial decision prohibiting the revocation of parole herein. Because the revocation occurred before *Terhune* was decided, there was no showing that any officials acted improperly in revoking Lyles's parole.

Consequently, even though the instant petition for commitment under the SVP Act was not filed until after Lyles should have been released from custody, these circumstances did not preclude the trial court from considering the People's petition for commitment on the merits. Although *Terhune* subsequently determined that such revocation of parole was unauthorized, *at the time the People sought to commit Lyles as a sexually violent predator*, his parole had been revoked and he was actually in custody.

Moreover, the twin purposes of public protection and ensuring treatment to the dangerous mentally ill would not be advanced by treating the "unlawful" revocation of parole as a jurisdictional barrier to a petition for commitment under the SVP Act.

For all these reasons, we conclude the circumstances of Lyles's parole revocation did not deprive the trial court of jurisdiction to entertain the People's petition for commitment under the SVP Act and to proceed to trial on the petition.[7]

## DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 23, 1998,

---

[7]We are aware Senate Bill No. 11 (1999-2000 Reg. Sess.), introduced on December 7, 1998, as urgency legislation, would amend section 6601 to include a provision that "[a] petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a mistake of fact or law. This paragraph shall apply to any petition filed on or after January 1, 1996." The bill also provides "it is declarative of existing law." (Legis. Counsel's Dig., Sen. Bill No. 11, as introduced Dec. 7, 1998.)

While Senate Bill No. 11 is still in the drafting stage, it reflects the view that the Legislature never intended to make *lawful* custody a jurisdictional prerequisite to the filing of a petition under the SVP Act.

which granted Lyles's motion to dismiss the People's petition for commitment under the SVP Act, and to enter a new and different order denying the motion, and to proceed to trial on the petition forthwith. The stay of Lyles's release shall remain in effect until trial is concluded. (§ 6602.)

Croskey, J., and Aldrich, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 17, 1999. Kennard, J., was of the opinion that the petition should be granted.